The MIDWEST CITY, a Municipal
Corporation, Appellee,

v.

Gobel CRAVENS et al., Appellants,

The City of Lawton, Oklahoma, a Municipal
Corporation, Intervenor-Appellee,

The Oklahoma AFL–CIO et al.,
Amicus Curiae.

No. 47552.

Supreme Court of Oklahoma.

Feb. 14, 1975.

Edward H. Ferrish, Midwest City, for appellee, City of Midwest City.

Manville Redman and Jerry Cude, Lawton, for intervenor-appellee, City of Lawton.

Jim L. Lindsey, Tulsa, for amicus curiae, Oklahoma Municipal League.

Larry Derryberry, Atty. Gen. of Oklahoma, for appellants.

Gene Stipe, Oklahoma City, for Oklahoma AFL–CIO.

Finis Smith, Tulsa, for Oklahoma Fraternal Order of Police.

Odie A. Nance, Nance, King & Roberts, Oklahoma City, for Oklahoma State Firefighters' Association and Local 127 of the Fraternal Order of Police, Midwest City.

IRWIN, Justice:

The Fraternal Order of Police (FOP), as the bargaining agent for the Midwest City Police Department, sought to negotiate the terms and conditions of an employment contract with Appellee, the City of Midwest City (City). City refused to negotiate the salary portion of the contract on the grounds that it called for a reclassification of Police personnel and under City's charter, City was solely responsible for such matters.

FOP filed a charge with Appellant, Public Employees Relation Board (Board), against City. FOP alleged, inter alia, that City had engaged in and was engaging in unfair labor practices contrary to 11 O.S. 1971, §§ 548.4 and 548.14; and 11 O.S. Supp.1972, § 548.3 and subsections 8, par. a(1) and 8, par. a(5). The above sections are a part of the Firefighters' and Policemen's Arbitration Law (Act).

City sought injunctive relief in the district court against Board and its members

from exercising jurisdiction over it. City took the position that the classification of police personnel and their terms and conditions of employment were matters of purely municipal concern as distinguished from general state-wide concern and its charter provisions superseded the Firefighters' and Policemen's Arbitration Law.

The district court granted City injunctive relief and permanently enjoined Board and its members from exercising further jurisdiction over City. Board appealed.

The Firefighters' and Policemen's Arbitration Law is a composite of an original enactment in 1971 and an amendment in 1972. A brief summary of these laws will clarify the issues.

The 1971 enactment was concerned only with firefighters and policemen. 11 O.S. 1971, § 548.2, provides:

"It is declared to be the public policy of this state to accord to the permanent members of any paid fire department or police department in any city, town or municipality all of the rights of labor, other than the right to strike or to engage in any work stoppage or slowdown." * * *.

Sec. 548.4, provides:

"The firefighters or policemen in any city, town or municipality shall have the separate right to bargain collectively with their respective city, town or municipality and to be represented by a bargaining agent in such collective bargaining with respect to wages, salaries, hours, rates of pay, grievances, working conditions and all other terms and conditions of employment. Provided, however, nothing herein contained shall prevent any employee or employees from having an audience with their employer at any time mutually agreeable."

Sec. 548.3(5) defines the meaning of the term "Collective Bargaining" as used in the Act.

Section 548.5 provides for the recognition of the bargaining agent by the municipality. Section 548.6 provides that it shall be the obligation of the municipality to meet at reasonable times and confer in good faith with the representatives of the firefighters or policemen.

Section 548.8 authorizes the selection of arbitrators in the event the municipality and the representative are unable to agree. Section 548.9 provides for the hearing before the arbitration board and that the arbitrators shall issue a written opinion containing findings and recommendations with respect to the issues presented. That section also provides:

"The corporate authorities are authorized, but not required, to adopt the majority opinion of the arbitrators and if adopted the agreement shall be binding upon the bargaining agent and the corporate authorities."

Section 548.14 provides for penalties against the individual corporate authorities who fail to bargain "in good faith in accordance with the provisions of this act."

The 1972 amendment created the Public Employees Relation Board. 11 O.S.Supp. 1972, § 548.4–1. The Legislature also extended the Act to apply to other municipal employees under certain circumstances. See 11 O.S.Supp.1972, § 548.3–1. Since no "other municipal employees" were involved in the proceedings, the trial court found it inappropriate to consider or determine the rights of "other municipal employees" under the 1972 amendment.

The trial court in its journal entry of judgment, inter alia, found:

(1) The home-rule charter of City had become the organic law of that City, and its charter provisions, ordinances and regulations concerning the issues presented, were inconsistent with the Act.

(2) The City's charter supersedes the general laws (the Firefighters' and Policemen's Arbitration Law) in matters of purely municipal concern. (Goodwin v. Oklahoma City (1947), 199 Okl. 26, 182 P. 2d 762);

(3) The administration of municipal police and fire departments are matters of lo-

cal municipal concern. (State ex rel. Brown v. Dunnaway (1952), 207 Okl. 144, 248 P.2d 232);

(4) The Legislature cannot delegate its Legislative powers, and any attempt to do so is void. (Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570). Neither may such powers be bargained or contracted away; and,

(5) The Firefighters' and Policemen's Arbitration Law is invalid because it violates Art. XVIII, § 3, of the Oklahoma Constitution, which related to municipal charters.

We agree with the conclusions of the trial court and the contentions of City, that if the Firefighters' and Policemen's Arbitration Law concerns merely municipal matters as distinguished from matters of state-wide concern, the provisions of City's charter supersede the Legislative enactment. Goodwin v. Oklahoma City, supra; and City of Ponca City v. Edwards (1969), Okl., 460 P.2d 418.

Query: Does the Act in question concern merely municipal matters?

In resolving this issue we must determine the meaning of the term "collective bargaining" as that term is employed in the Firefighters' and Policemen's Arbitration Law.

First, we should recognize there is a marked distinction between "collective bargaining" as that term is usually used in private employment and as used in public employment; and courts have traditionally recognized a distinction. 48 Am.Jur.2d, Labor & Labor Relations, § 1201. The Congress of the United States was sufficiently aware of the distinction when public employees were excluded from the provision of the National Labor Relations Act. 29 U.S.C.A. (1970), § 152(2).

Wyoming apparently finds no distinction. In State v. City of Laramie (1968), Wyo., 437 P.2d 295, the court held that compulsory arbitration was not unconstitutional on the theory that municipalities were created by the Legislature and the rules governing them could be changed by the Legislature. The question of home-rule charter over state law was not in issue. On the other hand, the Supreme Court of Missouri in City of Springfield v. Clouse (1947), 356 Mo. 1239, 206 S.W.2d 539, reached an opposite conclusion. That Court said that under our form of government, public office or employment never has been and cannot become a matter of bargaining and contract.

Colorado, in Fellows v. La Tronica (1962), 151 Colo. 300, 377 P.2d 547, citing with approval the Missouri case, supra, held that public officers do not have authority to enter into collective bargaining agreements with public employees, and said:

"The reasoning of most of the reported cases is that the employer-employee relationship in government is a legislative matter which may not be delegated. Such contracts if permitted to stand would result in taking away from a municipality its legislative power to control its employees and vest such control in an unelected and uncontrolled private organization (a union). * * *."

A Kansas case, Wichita Public Schools Employees'. Union v. Smith (1964), 194 Kan. 2, 397 P.2d 357, held that their statute concerning collective bargaining included only private industry and not state or municipal employees. The court did state (dictum) "The entire matter of qualifications, tenure, compensation and working conditions for any public employee involves the exercise of governmental powers which are exercised by or through legislative fiat. Under our form of government public office or public employment cannot become a matter of collective bargaining and contract."

Ballentines Law Dictionary, 3rd Edition, defines "Collective Bargaining" as a course of conduct or process calculated to insure freedom of negotiation in the settlement of issues involved in labor disputes and to facilitate an arrival at equitable understandings respecting hours of employment, wages, working conditions, and other mat-

ters of concern in employer-employee relations.

■ Generally speaking, collective bargaining by its recognized definition in the field of labor relations presupposes something more than presentation of grievances and discussion of terms of employment. The essence of collective bargaining is the right to negotiate, and in order for collective bargaining to be meaningful, there must be some assurance that negotiations will be binding on the parties.

■ Although our Legislature declared the public policy of the State was to accord to firefighters and policemen "all the rights of labor, other than the right to strike or to engage in any work stoppage or slow-down" the Firefighters' and Policemen's Arbitration Law does not accord such rights, nor does the term "collective bargaining" as sued in the act come within the purview of the meaning of the term "collective bargaining" as that term is generally employed.

11 O.S.1971, § 548.3(5), provides:

" 'Collective bargaining' shall mean the performance of the mutual obligation of the municipal employer or his designated representatives and the representative of the employees to meet at reasonable times, including meetings appropriately related to the budget-making process; to confer in good faith with respect to wages, hours and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder; and to execute a written contract incorporating any agreement reached if requested by either party. Such obligation shall not, however, compel either party to agree to a proposal or require the making of a concession."

Although the above section requires that the parties shall confer in good faith, neither party is compelled to agree to a proposal or required to make a concession. If the issues are submitted to arbitration, "The corporate authorities are authorized, but not required, to adopt the majority opinion of the arbitrators * * *." Sec. 548.9.

■ In our opinion, the Legislature created a vehicle by which firefighters and policemen could discuss their grievances and terms and conditions of their employment with municipal authorities, but the municipal authorities retain the right to make the final decision on all issues presented and discussed.

Board, in effect, agrees with our interpretation of the Act. Board states in its brief that there is no language in the Act which requires the governing board of a municipality to delegate its legislative authority to enact ordinances providing for the wages, salaries, hours, rates of pay, grievances, working conditions, or other terms and conditions of employment; and that the only duties imposed upon a municipality in regard to collective bargaining processes are the duties to meet at reasonable times, to confer in good faith with respect to wages, hours, and other conditions of employment. Board construes the Act as an advisory vehicle and the municipal authorities may accept or reject the advice.

Our law, though worded quite differently, has some of the attributes of the California law. The State of California did not have an arbitration proviso, but has a statute authorizing right of self organization to present grievances and recommendations regarding wages, and terms and conditions of employment. In Professional Firefighters, Inc. v. City of Los Angeles (1963), 60 Cal.2d 276, 32 Cal.Rptr. 830, 384 P.2d 158, the California Court said the total effect of the Legislature (authorizing the committees or organizations) was not to deprive local government (Charter city or otherwise) of the right to manage and control of its fire department but to create a uniform fair labor practice throughout the state. As such, the legislature may infringe upon local control to a limited extent, but it is none the less a matter of state-wide concern.

In City of Wewoka v. Rodman (1935), 172 Okl. 630, 46 P.2d 334, we said "The

law is clear that the control of a freeholder charter city over the personnel of its fire department is solely a matter of municipal concern, and hence not subject to legislative control. State v. Callahan, 96 Okl. 276, 221 P. 718; Hinz v. Hubbard, 95 Okl. 164, 216 P. 440; * * *." We do not depart from this ruling in deciding the issues here; the Act in question simply does not deprive the right of City to control the terms and conditions of the employment of its firefighters and policemen, and may not be construed as according the rights to firefighters and policemen that private employees enjoy in labor relations. Surely, municipal employees may on their own, make recommendations and suggestions and confer with their employer concerning the terms and conditions of their employment.

In Newport News Fire Fighters Association v. City of Newport News, Virginia (D.C.1972), 339 F.Supp. 13, the Court said there was no statutory right of collective bargaining for public employees, but this did not preclude them from sitting down at a table with representatives of the city and discussing matters concerning the employment relations.

■ The Act in question merely provides for a collective voice for firefighters and policemen to speak to their employer. The municipal authorities, in their sole discretion, may or may not adopt the views of the collective voice. The Legislature has determined that it is a matter of state-wide concern that the permanent members of any paid fire department or police department, be accorded the privilege of communicating with their respective employers with a collective voice. In our opinion, the privilege of communicating with their respective employers with a collective voice involves a matter of state-wide concern and the Act authorizing them to speak through a collective voice supersedes any charter provisions to the contrary.

■ We therefore hold that the Firefighters' and Policemen's Arbitration Law, as herein construed, does not contravene Art. XVIII, § 3, of our Constitution, and

the firefighters through their representatives, were entitled to discuss with City's authorities the terms and conditions of their employment.

11 O.S.1971, § 548.14 provides for criminal penalties if "any official, executive, administrator, manager, or member of a governing body exercising the authority to fix and determine" employment conditions for firemen and firefighters fails to bargain in good faith in accordance with the Act. Board has not asserted that these penalty provisions are applicable. Our holding, therefore, is not determinative of the constitutionality of this section or the question of whether any official may have failed to bargain in good faith.

In reaching our conclusion we have set forth and discussed pertinent provisions of the Firefighters' and Policemen's Arbitration Law since the entire enactment had to be considered in determining whether it involved purely municipal matters or matters of state-wide concern. However, the import of certain provisions of the enactment could be a fertile field for litigation and the constitutionality of each provision has not been placed in issue. As an example, 11 O.S.1971, §§ 548.7–548.10, relate to arbitration. However, no attempt has been made to invoke the arbitration provisions and City has not been charged with failure to comply with such provisions. Therefore, construing or determining the constitutionality of the provisions relating to arbitration, would not be appropriate in these proceedings.

City contends the amendatory act of 1972 is unconstitutional and the Board has no authority or jurisdiction to hear or adjudicate any matter presented by FOP.

The original 1971 enactment, 11 O.S. 1971, § 548.3, defined "Firefighters and Policemen" as " * * * the permanent paid members of any fire department or police department in any city, town, or municipality within the State of Oklahoma."

The 1971 enactment has reference to and includes only firefighters and policemen and no other employees.

In 1972 the Legislature sought to extend its scope and enacted 11 O.S.Supp.1972, § 548.3(10), which provides: "The term 'Firefighters and Policemen' as used in 11 Oklahoma Statutes, §§ 548.2, 548.6, 548.10, 548.12 and 548.14, shall be deemed to include and apply to municipal employees."

By the 1972 amendment, the Legislature has attempted to amend and extend by reference, the section set forth in § 548.3(10), and purports to make said section applicable to all municipal employees and to make the term "Firefighters and Policemen" to mean all municipal employees.

Article V, § 57, of the Oklahoma Constitution, provides that " * * * no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be reenacted and published at length: * * *."

■■■ This is a clear case of amendment and extension by reference, without re-enactment and publication at length in contravention of the Constitution. Therefore, the 1971 Act and the 1972 amendment is inoperative so as to confer any benefits upon any employees, except firemen and policemen.

■■■ This does not necessarily mean that the Public Employees Relation Board, appellant herein, has the authority and jurisdiction to hear and adjudicate FOP's complaint filed with it. Notwithstanding the fact that certain parts of the 1972 amendatory enactment is unconstitutional, and assuming, arguendo, that the Legislature would have created the Public Employees Relation Board for only the Firefighters and Policemen, we find Board has no authority to adjudicate the charge filed with it against City.

11 O.S.Supp.1972, § 548.4, prescribes certain duties of the Board, but those duties relate to the selection or election of bargaining agents.

The charge against the City alleges it is engaged in unfair labor practices and 11 O.S.1971, § 548.3, defines what acts shall be deemed to be "unfair labor practices".

The Public Employees Relation Board was created by 11 O.S.Supp.1972, § 548.4-1. Sub-paragraph (D) thereof, provides: "The Board shall adopt, promulgate, amend or rescind such rules and regulations as it deems necessary and administratively feasible to carry out the provisions of this act. * * *."

Although Board is granted the power to subpoena witnesses, issue subpoenas, etc., [§ 548.4-1] there are absolutely no Legislative standards or guidelines prescribing what the Board may do if an individual or entity is charged with unfair labor practices. It appears the Legislature delegated to the Board absolute discretion to determine what authority it may or would exercise in case of unfair labor practices. The Legislature has, in effect, delegated to the Board, legislative powers which it alone could exercise.

In Atchley v. Board of Barber Examiners, 208 Okl. 453, 257 P.2d 302, we held that the "Power to determine the policy of the law is primarily legislative, and cannot be delegated whereas the power to make rules of a subordinate character in order to carry out that policy and apply it to varying conditions, although partaking of a legislative character, is in its dominant aspect administrative and can be delegated."

The Public Employees Relation Board, in the case at bar, is attempting to hear and adjudicate a charge that City has engaged in unfair labor practices. Since there are no legislative standards or guidelines prescribing what authority the Board may exercise in adjudicating the charge against City, City is entitled to a writ prohibiting the Board from exercising further jurisdiction in the cause.

The judgment of the trial court is reversed in reference to its determination that the Firefighters' and Policemen's Arbitration Act contravenes Article XVIII, § 3, of the Constitution; the judgment is affirmed permanently enjoining the Board

from further proceeding in the case against City now pending before it.

All of the Justices concur.

DOOLIN, J., certified his disqualification in this case. The Honorable C. F. BLISS was appointed in his stead.