CITIES AND TOWNS
The administration of the provisions of the Police Pension and Retirement System is not a matter of purely local concern but a subject of substantial interest to the State. Therefore, a municipal board of trustees may not retire a police officer on the basis of service who has served less that twenty years but attained a municipal mandatory retirement age of 65 in violation of 11 O.S. 50-114A [11-50-114A] (1977). The Attorney General has considered your request for an opinion wherein you ask the following question: "May the board of trustees of a Police Pension and Retirement System of a city or town of Oklahoma, as governed by the powers outlined in 11 O.S. 541 [11-541], authorize the payment of a pension on the basis of service, in accordance with 11 O.S. 541 [11-541](k), where the police officer has served less than twenty (20) years on a police department in Oklahoma, but has reached the age of 65, and where the ordinances of that city or town require mandatory retirement at age sixty-five. "We are further requesting that you review the question we pose in light of the revised 11 O.S. 541 [11-541] and 11 O.S. 543 [11-543], which become effective July 1, 1978." The Attorney General has been informed that this opinion request is based on the following circumstances: In municipalities across the State, ordinances have been enacted lowering the mandatory retirement age as specified in the Police Pension Retirement Act from age seventy, to age sixty-five pursuant to a supposed grant of authority found in Attorney General Opinion No. 70-115, dated May 11, 1970. The resulting situation has been that police officers meeting the mandatory retirement age requirement of their municipality but failing to meet the twenty year service requirement of the Act have been denied a service pension by the State Police Pension and Retirement Board pursuant to the exercise of their authority found at 11 O.S. 50-202 [11-50-202](3) (1977). 11 O.S. 50-202 [11-50-202](3) reads, in part, as follows: 'The Board shall . . . have authority to: "3. Review all pensions or retirements granted by any Board of Trustees of a Police Pension Retirement System . . . to determine if said decisions were in conformity with the law . . . and may affirm, disallow or modify any such . . . retirement. . . " It is in light of these facts, that this opinion is written. It should first be noted that Attorney General Opinion No. 70-115 held that the city of Seminole did have the authority to fix a mandatory retirement age at sixty-five (65) years of age for policeman. However, that opinion did not go far enough and contained a disclaimer stating: "We express no opinion upon the rights of the Seminole police officers and the Pension System should the city of Seminole lower its mandatory retirement age from seventy to sixty-five years." In light of the statutory grant of authority to the local Police Pension Retirement Board found at 11 O.S. 541 [11-541](r) (1971) as reenacted by the Municipal Code at 11 O.S. 50-121 [11-50-121] (1977), and case law in the area, we are of the opinion that Attorney General's Opinion No. 70-115 must be overruled to the extent that it conflicts with this opinion. 11 O.S. 50-121 [11-50-121] of the Police Pension Retirement Act from which municipalities draw their authority to enact ordinances to effectuate the retirement law reads as follows: "The governing body of any municipality which has established a Police Pension and Retirement System is hereby authorized and empowered to pass any and all ordinances specifically mentioned in this article, and such other ordinances as shall be necessary to accomplish the purposes provided in this article." Therefore, it is clear that this grant of authority must be construed in light of other provisions appearing in the Act as well as the general rules of law applicable here. In the case of In re Gribben, Okla., 47 P. 1074
(1897), the Court held that a municipality may not enact any and all ordinances, rather, such ordinances must be for the purpose and within the limitations of the legislative power delegated to them as well as being consistent with, and not repugnant to, the Constitution or the general laws of the United States and the State of Oklahoma. It is further principle that municipalities are creatures of the legislature, deriving their powers and functions therefrom. Town of Maysville v. Magnolia Petroleum Co., 272 F.2d 806 (Okl. 1959). Since the supreme legislative power of government is vested in the sovereign, it is therefore basic that municipalities have no inherent power or authority. Rather, they possess and can exercise only those powers granted in express words, or necessarily or fairly implied, or incidental to the powers expressly granted to them by the Legislature. Shipp v. Southeastern Oklahoma Industries Authority, Okl.498 P.2d 1395 (1972). The law is well settled that a "home rule" municipality acting pursuant to a charter provision may exercise sovereign authority which supersedes conflicting state law in matters of purely municipal concern. City of Ponca City v. Edwards, Okl., 460 P.2d 418
(1969); Lee v. Norick, Okl. 447 P.2d 1015 (1968). However, evidenced by statutory provision and prior Attorney General Opinion, it is clear that the Police Pension and Retirement System is not considered a matter of purely local concern, but of substantial State interest. Title 36 O.S. 312.1 [36-312.1] (1971), provides statutory authority for the proposition that the State has a substantial interest in the municipal Police Pension Retirement System. That section reads as follows: "The Insurance Commissioner shall report and disburse all of the fees and taxes collected under 624 of this Title, and the same hereby appropriated as follows to wit: ". . . "(b) Sixty-one sixty-fourths percent (61/64%) of the four percent (4%) taxes collected on premiums by insurance companies other than fire insurance companies, on automobile liability and property damage and burglary and theft insurance in this state shall be allocated and disbursed annually to the Police Pension and Retirement System of each city or town of this state having such a system under the provisions of 11 O.S. 541-541x [11-541-541x], in the proportion that the total amount of salaries paid to police officers participating and entitled to participate under the system of each city or town bears to the total amount of salaries paid to police officers participating and entitled to participate in all such systems said disbursements to be deposited and expended by each system as and for the same purpose other funds thereof are deposited and expended; . . ." Further in an Opinion of the Attorney General No. 69-360, dated February 27, 1970, the issue of whether the Municipal Police Pension Retirement was a matter of purely municipal concern was decided. In that opinion the following language appears: "The eligibility of policemen to pensions and retirement is not a matter of purely municipal concern. The charter and ordinances of a city in regard thereto would not control over state general law for the reason that substantial funds for such pensions and retirement are levied and supplied by taxation at the state level." In light of the cited authority, and while municipal ordinances enacted pursuant to 11 O.S. 50-121 [11-50-121] can parallel or construe state law, it is abundantly clear that municipal ordinances cannot conflict with the laws of the State of Oklahoma, the United States, or the Constitution. 11 O.S. 541 [11-541] previously furnished the statutory framework upon which municipalities may establish locally controlled police pension and retirement systems. Oklahoma Municipal Code, enacted by laws 1977, Chapter 256, effective July 1, 1978, repealed the entirety of Title 11 of the Oklahoma Statutes, its expressed object being to update, reorganize, and clarify the laws governing municipalities. 11 O.S. 541 [11-541] has been essentially recodified and combined with 11 O.S. 543 [11-543] to form Chapter 50 of the Oklahoma Municipal Code. 11 O.S. 50-114A [11-50-114A] setting forth the identical eligibility requirements specified in 11 O.S. 541k [11-541k], provides, in part, as follows: "A . . . . In order for a police officer to be eligible for such service pension the following requirements must be complied with "1. The officer's service for the police department for any such municipality must have ceased; "2. The officer must have served for a period of twenty (20) years or more in some Police Department in the State of Oklahoma or a standard equivalent to that required for eligibility under this article, the last five (5) years of which service shall have been consecutive immediately preceding the end of such period and with the municipality paying said pension; "3. The officer must have complied with any agreement as to contributions by such officer and other police officers to any funds of the Police Pension and Retirement System where said agreement has been made as provided by this article; . . ." 11 O.S. 50-114C [11-50-114C] similarly provides that a police officer must retire upon reaching the age of seventy, whereupon the officer is retired with pension benefits regardless of the number of years of service. It is a basic rule of statutory construction that statutes should be interpreted to reach true intent and meaning of the Legislature and in light of its general purpose and object reading the act as a whole. Tannehill v. Special Indemnity Fund, Okl., 538 P.2d 590 (1975); Adams v. Fry,204 Okl. 407, 230 P.2d 915 (1951.) Clearly, the reason for the setting of eligibility requirements was to protect the fiscal soundness of the retirement system which is a valid legislative purpose. It is, therefore, clear under a plain reading of the statutes, that it was the intent of the Legislature to preclude any police officer from eligibility for pension benefits who fails to satisfy the above cited requirements under the provisions of Chapter 50 of the Oklahoma Municipal Code. Further, it is a general rule of law that where two acts or parts of acts are reasonably susceptible of a construction that will give effect to both and to words of each, without violence to either, it should be adopted in preference to one which though reasonable, leads to a conclusion that there is a conflict. R. V. McGinnis Theaters and Pay T.V., Inc. v. Video Independent Theaters, Inc., 262 F. Supp. 607 (D.C. Okl., 1967). It is, therefore, clear that under the provisions of 11 O.S. 50-121 [11-50-121] a municipality may not pass a valid ordinance in conflict with 11 O.S. 50-114A [11-50-114A] purporting to allow the retirement of a police officer on the basis of service when such officer has served less than twenty years or has not reached age seventy having served twenty years or any lesser number. Therefore, an ordinance fixing mandatory retirement for police officers at age sixty-five would be in conflict with the laws of the State of Oklahoma if it acted to preclude officers in the system from serving the required twenty years. This opinion makes no attempt to discuss the validity of a mandatory retirement age under seventy for police officers which has justification under job-related physical or mental health requirements. Neither does it express any opinion concerning the impact of the 1978 amendments to the federal age discrimination law upon a municipal mandatory retirement age of sixty-five. It is therefore the Opinion of the Attorney General that your question be answered as follows: The administration of the provisions of the Police Pension and Retirement System is not a matter of purely local concern but a subject of substantial interest to the State. Therefore, a municipal board of trustees may not retire a police officer on the basis of service who has served less than twenty years but attained a municipal mandatory retirement age of 65 in violation of 11 O.S. 50-114A [11-50-114A] (1977). (CATHERINE GATCHELL NAIFEH) (ksg)