Dear Representative Wesselhoft,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Can a city or town that has adopted a municipal charter enact and enforce an ordinance to ban specific breeds of dogs?
¶ 1 A city with a population in excess of 2,000 may adopt a municipal charter pursuant to Article XVIII, Section 3(a) of the Oklahoma Constitution which, if adopted and approved in accordance with the Constitution, becomes the organic law of the city. Okla. Const. art. XVIII, § 3(a). "Charter provisions, which have the force of a city's fundamental law, supersede state lawonly when they affect a subject that is deemed to lie exclusively within municipal (or local) concern. All conflicting charter provisions must yield to the State's Constitution and to the general laws which govern state functions." Simpson v.Dixon, 853 P.2d 176, 186 (Okla. 1993) (footnotes omitted).
¶ 2 Title 4 of the Oklahoma Statutes contains provisions regulating dogs and their ownership, particularly "dangerous and potentially dangerous" dogs. 4 O.S. 2001, § 47[4-47]; see 4 O.S. 2001 Supp. 2004, §§ 41-47. Section 46 requires proper enclosures, muzzles and restraints for dangerous dogs. 4 O.S.2001, § 46[4-46] (A). Pertinent to the instant discussion, Section 46 also states that "[p]otentially dangerous or dangerous dogs may be regulated through local, municipal and county authorities,provided the regulations are not breed specific." Id. § 46(B) (emphasis added). A city charter provision banning a specific breed of dog would conflict with 4 O.S. 2001, § 46[4-46] (B). Accordingly, such a city charter provision would supersede state law prohibiting breed specific regulations only if the regulation of dogs is a matter of purely municipal or local concern.Simpson, 853 P.2d at 186; see also City of Ponca City v.Edwards, 460 P.2d 418, 421 (Okla. 1969) ("It is clearly settled in this jurisdiction that a city charter which is adopted and approved in accordance with the Constitution and which is not inconsistent therewith becomes the organic law of the city and supersedes all laws of the state in conflict therewith insofar as such laws relate to merely municipal matters."); Midwest City v.Cravens, 532 P.2d 829, 831 (Okla. 1975) ("The City's charter supersedes the general laws (the Firefighters' and Policemen's Arbitration Law) in matters of purely municipal concern.").
¶ 3 The Oklahoma Supreme Court addressed the issue of whether the regulation of dogs is a matter of purely local concern inHampton v. Hammons, 743 P.2d 1053 (Okla. 1987). Hampton
initially concluded that "[a]lthough regulation of dogs within a home rule city's limits might be a matter of local concern which would supersede a conflicting state statute," such a determination was unnecessary because a Tulsa regulation defining "ownership" more broadly than a state statute for purposes of liability for a dog attack could be harmonized with the state statute. Id. at 1060. However, the court continued:
 There are some matters which are of concern to both the city and state and not the exclusive concern of either. When this is the case, the two provisions governing the matter are cumulative and each is operative. We find that matters concerning dog attacks is one area of concurrent local and state concern, and that where such ordinances exist and are not irreconcilable with the state statute, they are to be construed cumulatively. . . .
Id. (footnotes omitted).
¶ 4 The court thus suggested that regulation of dogs is a matter of concurrent local and state concern, and that a local ordinance and a state statute relating to dogs and dog attacks may be construed cumulatively, if the ordinance is not irreconcilable with the state statute. Id.; see also Walton v.Donnelly, 201 P. 367, 369 (Okla. 1921) (holding that "in matters not purely municipal, [municipal ordinances] may run concurrently with the general laws of the state, [but] they may not run counter thereto"). A municipal ordinance passed by a city that banned a specific breed of dog would run directly counter to4 O.S. 2001, § 46[4-46] (B), which prohibits breed-specific municipal regulations; accordingly, such a local ordinance must yield to the state statute.
¶ 5 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Title 4 O.S. 2001, § 46[4-46](B) of the Oklahoma Statutes prohibits breed-specific municipal regulations concerning potentially dangerous or dangerous dogs.
 2. A charter city's ordinances supersede state law only in matters of purely municipal concern. Simpson v. Dixon, 853 P.2d 176, 186 (Okla. 1993).
 3. The Oklahoma Supreme Court has stated that regulation of dogs is a matter of concurrent local and state concern, and that a local ordinance and a state statute relating to dogs and dog attacks may be construed cumulatively if the ordinance is not irreconcilable with the state statute. Hampton v. Hammons, 743 P.2d 1053, 1060 (Okla. 1987).
 4. A municipal ordinance that banned a specific breed of dog would run directly counter to 4 O.S. 2001, § 46 (B), which prohibits breed-specific municipal regulations; accordingly, a city or town which has adopted a municipal charter could not enact and enforce an ordinance to ban specific breeds of dogs.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 JOANN T. STEVENSON Assistant Attorney General